UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CASEY HARMON,

                    Plaintiff,

v.

UNKNOWN MOORE, et al.,

                    Defendants.

_____/

Case No. 1:25-cv-871

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a county detainee under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.13.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.    Factual Allegations

Plaintiff is a pretrial detainee presently incarcerated at the Kent County Correctional Facility (KCCF) in Grand Rapids, Michigan.[2]  Plaintiff sues the following KCCF personnel in their official and personal capacities: Sergeants Unknown Goodson, Unknown Shoop, Unknown Cheney, and Unknown Vernocke; Officers Unknown Moore, Unknown Engstrom, and Unknown McNeil; Chaplain Unknown Fuller; Mental Health Worker Kaylynn; and Unknown Parties.  (Compl., ECF No. 1, PageID.3.)

#### A.    Allegations Concerning Legal Mail

Plaintiff alleges that on June 12th, he submitted a kite regarding the mail that Plaintiff was supposed to have received that day.  (*Id.*, PageID.4.)  Defendant Moore told Plaintiff that he could only see his mail if "it was scanned through the Smart Communications software."  (*Id.*)  Plaintiff contends that this software allows him to view his legal mail through his tablet, but that all sergeants can view the legal mail as well.  (*Id.*)

Plaintiff avers that KCCF still allows "legal mail to physically be given to inmates in the presence of an officer."  (*Id.*)  Plaintiff told Defendant Moore that he was representing himself on all of his cases, and that he needed physical copies of his mail.  (*Id.*)  Defendant Moore told Plaintiff that "could not happen [and] that

---

[2] The KCCF online booking search states that Plaintiff's charge status is currently pretrial. *See* https://eisjailviewer.kentcountymi.gov/ (select "Access Site," enter "Harmon" for "Last Name," enter "Casey" for "First Name," then select the entry for Booking # 2403370) (last visited Aug 11, 2025).

[Plaintiff's] legal mail would just be put into [his] property unopened if [Plaintiff] refused the process." (*Id.*) Plaintiff told Defendant Moore to put the mail with his property "until [he] figured the issue out," and Defendant Moore stated that she would. (*Id.*)

The next day, Plaintiff learned that he could get physical copies of his mail. (*Id.*) Plaintiff avers that he also learned that the mail would be scanned to his tablet, "but that there was a specific legal mail app that would appear after [he] created an account for it." (*Id.*) Plaintiff set up the account and began writing kites to Defendant Goodson to try to get his mail. (*Id.*) Plaintiff contends that Defendant Goodson ignored his multiple kites, and that Defendants Shoop, Cheney, and Vernocke "all said [they were] not grievable issues." (*Id.*) In one kite directed to Defendant Cheney and all sergeants, Plaintiff stated that his right to access the courts, as well as his right to receive legal mail, had been violated. (*Id.*, PageID.5.)

Plaintiff indicates that he sent a total of four to six kites about the legal mail issue throughout June and July, and that they were all "essentially ignored" by the sergeants. (*Id.*) Defendant Engstrom "illegally responded to the kites." (*Id.*) Plaintiff claims that he still has not received his mail and does not know "what the court of appeals sent [him] that day" because he has two separate filings in that court. (*Id.*)

Plaintiff goes on to allege that on June 30th, KCCF received more mail for him from the court of appeals, but that staff returned the mail with "a note on the envelope saying the sender was unknown." (*Id.*) Plaintiff claims that on July 7th, the facility in Florida that scans the mail for KCCF received the mail "due to it being returned

from the jail[,] resulting in it being scanned through the postal mail app which [is not] for legal mail." (*Id.*)  Plaintiff states that he does not receive regular mail, so it was not until July 15th that he "just so happened to check the postal mail app [and] see the June 30th mail." (*Id.*)

Plaintiff wrote a grievance about the June 30th mail, and Defendant Shoop responded that Plaintiff could request his mail through inmate services.  (*Id.*, PageID.6.)  Plaintiff contends that his criminal case "is being prejudiced by jail officials mis[]treating [his] mail and[/]or failing to fix the problems." (*Id.*)  Plaintiff contends that he is "stressed out" from "having to deal with [three] felony cases as well as receiving [his] legal mail." (*Id.*)

Plaintiff alleges that he sent his first few kites about the issue to Defendant Goodson, and Defendant Engstrom responded to them.  (*Id.*)  When Plaintiff "responded to what he said[, Defendant] Cheney responded to that response." (*Id.*) Defendant then wrote a grievance to Defendant Cheney and all sergeants, to which Defendant Vernocke responded.  (*Id.*)  Plaintiff contends that everyone "keeps ping ponging [and] dodging the issues with [Plaintiff's] legal mail." (*Id.*)

On July 16th, Defendant Moore was in charge of the mail.  (*Id.*, PageID.7.) Plaintiff claims that the cart that scans and prints the mail was not working that day, so Defendant Moore told Plaintiff to request his legal mail the next day.  (*Id.*) Plaintiff did so by submitting a kite and did not get his mail.  (*Id.*)  Plaintiff alleges that on July 16th, he asked Defendant Moore if she could bring his mail to him, and Defendant Moore said she was not going to do that.  (*Id.*)  Plaintiff states that on July

19th, he received physical copies of the mail from July 16th "without it being scanned [due] to the cart not working." (*Id.*)

Plaintiff goes on to state that Defendants Unknown Parties were involved in receiving and returning the legal mail from the court of appeals that arrived on June 30th. Plaintiff states that Officer John Doe was responsible for returning the legal mail to the court of appeals, and that staff member John Doe was "working the mail processing facility in Seminole, Florida." (*Id.*)

Based upon the foregoing, Plaintiff seeks injunctive relief in the form of an order directing that his mail be given to him, as well as $30,000.00 in damages. (*Id.*)

### B.    Allegations Concerning Issues with Trays and Food

Plaintiff alleges that on March 21st and 31st, he submitted kites to Defendant McNeil "about [his] trays having cracks in them." (*Id.*, PageID.8.) Plaintiff alleges that on May 27th, his lunch tray had a crack, and he received moldy bread. (*Id.*) Plaintiff told the officer for his pod about the issues. (*Id.*) Plaintiff received another cracked tray on May 28th. (*Id.*) He then wrote a grievance "stating that it is a safety hazard to serve food on cracked trays." (*Id.*) According to Plaintiff, the cracks "are the result of inmates using the trays to break [their] cell door windows[,] but the trays are not being replaced." (*Id.*)

Plaintiff avers that Defendant McNeil "responded illegally" to the grievance. (*Id.*) Plaintiff claims that the cracked trays presented an issue because beans with excess water were placed in the cracked areas, and that could result in bacteria or mold. (*Id.*) Defendant McNeil stated that all the cracked trays would be replaced, and that she would address the moldy bread issue. (*Id.*) However, "the very next day

7

there was a crack in [Plaintiff's] tray, and as [Plaintiff] always [does he] showed the deputy the tray in front of the camera." (*Id.*)

On July 18th, Plaintiff showed non-party Officer Caldera his cracked lunch tray. (*Id.*) Officer Caldera told Plaintiff "that he would not have time to call the kitchen to replace the tray." (*Id.*)

Plaintiff avers that the issues with the trays prevent him from receiving adequate calories because he does not eat the servings of beans that are placed in the cracked areas "due to the health risk." (*Id.*, PageID.9.) Plaintiff also mentions that in October of 2024, he was part of "an administration complaint against the kitchen" due to not receiving fruit or nutrients on the food trays, not receiving a menu that specified calorie counts, and due to receiving "unnecessary amounts of soy meat." (*Id.*) Plaintiff claims that the kitchen, which is under Defendant McNeil's authority, only serves fruit "whenever the kitchen is under inspection or one of the kitchen machines are down." (*Id.*) Plaintiff contends that not receiving nutrients and fruit violates his constitutional rights because his housing floor "ha[s] no way [to receive] outside fresh air or sun." (*Id.*)

Plaintiff goes on to state that the bread that is served is floury and often unbaked, which prevents him from eating it. (*Id.*, PageID.10.) Plaintiff told officers about the issue. (*Id.*) Plaintiff references an incident on July 14th where there "was clear [flour] on the bread." (*Id.*) Plaintiff showed the bread to non-party Officer Spensburg "in front of the camera and did not eat it." (*Id.*)

Based upon the foregoing, Plaintiff seeks injunctive relief in the form of an order that the food trays be replaced, that fruit be served, and that "a menu of each meal specifying the calories of each meal to at least be placed on the wall of each pod." (*Id.*)  Plaintiff also seeks $50,000.00 in damages.  (*Id.*)

### C.    Allegations Regarding Religious Diet

On July 15th, Defendant Fuller interviewed Plaintiff regarding Plaintiff's request to be placed on a religious diet because he is Muslim.  (*Id.*, PageID.11.) Plaintiff told Defendant Fuller that an officer had told Plaintiff that there was a vegan diet he could receive.  (*Id.*)  Plaintiff told Defendant Fuller that he could not eat the hot dogs, ham slices, and bologna on the trays, and Defendant Fuller said that he would provide the religious diet to Plaintiff.  (*Id.*)

On July 18th, Plaintiff submitted a kite to Defendant Fuller because he still had not received the diet.  (*Id.*)  Defendant Fuller stated that KCCF's administration was still reviewing Plaintiff's diet request.  (*Id.*)  On July 28th, Plaintiff met with Defendant Fuller because Plaintiff still had not received the religious diet.  (*Id.*) Defendant Fuller told Plaintiff that he and "his boss" had approved the request, but that Defendant Goodson had to approve it before it went to the kitchen and that Defendant Goodson may not have done that yet.  (*Id.*)

Based on the foregoing, Plaintiff seeks injunctive relief in the form of an order that he receive a vegan diet.  (*Id.*)

### D.    Allegations Concerning Defendant Kaylynn

On July 8th, Plaintiff submitted a kite about Defendant Kaylynn.  (*Id.*, PageID.12.)  Plaintiff claims that he has been in housing unit D1F since October of

2024.  (*Id.*)  Plaintiff never requests mental health assistance, but claims that every two weeks, at 8:00 a.m., Defendant Kaylynn harasses him by banging on the cell door to wake Plaintiff up and ask if he has any mental health issues and if Plaintiff knows how to reach out if he needs to.  (*Id.*)

Plaintiff avers that Defendant Kaylynn comes to his cell door because "when she first used to have the officer call [Plaintiff] to the control center[, Plaintiff would] refuse[,] stating [he] was okay mentally."  (*Id.*)  In his kite, Plaintiff stated that he was not bound by any policy to talk to mental health, and Defendant Kaylynn responded that "because of [Plaintiff's] charges she comes and checks on [him and] will continue to do so."  (*Id.*)  Defendant Shoop stated that the issue was not grievable. (*Id.*)

Based on the foregoing, Plaintiff seeks injunctive relief in the form of an order directing Defendant Kaylynn to stop harassing him by waking him up and asking repetitive questions, and for mental health to meet with him only upon his request. (*Id.*)  Plaintiff asserts that Defendant Kaylynn is "unreasonably" altering his sleep schedule.  (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

11

### A.    Official Capacity Claims

As an initial matter, Plaintiff brings claims against Defendants in both their official and personal capacities.  Ordinarily, a suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity—in this case, Kent County, Michigan.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  Kent County may be held liable for Plaintiff's injuries only if those injuries were the result of an unconstitutional policy or custom of the County.  *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Monell v. Department of Social Services,* 436 U.S. 658 (1978)).  Plaintiff complaint is devoid of any allegations suggesting that any named Defendant's conduct was the result of any policy or custom implemented by Kent County.   Therefore, Plaintiff's official capacity claims against Defendants are properly dismissed.

### B.    Personal Capacity Claims

#### 1.    Claims Against Defendants Goodson, Shoop, Cheney, Vernocke, and Engstrom

Throughout his complaint, Plaintiff suggests that Defendants Goodson, Shoop, Cheney, and Vernocke, all of whom he asserts are sergeants at KCCF, ignored his numerous kites regarding various complaints and told Plaintiff that certain issues were not grievable.  Plaintiff also contends that Defendant Engstrom "illegally responded" to Plaintiff's kites regarding his legal mail.  (Compl., ECF No. 1, PageID.5.)  Plaintiff also appears to fault Defendant Goodson for not acting upon

Plaintiff's religious diet request after it had been approved by Defendant Fuller.  (*Id.*, PageID.11.)

As an initial matter, various courts have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Moreover, Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Thus, because Plaintiff has no liberty interest in the grievance process, any interference with the grievance process or inadequate responses to Plaintiff's grievances did not deprive Plaintiff of due process.

Moreover, to the extent that Plaintiff intended to allege that his right to petition the government was violated by any interference with the grievance process, this right is not violated by a failure to process or act on his grievances.  The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views."  *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition

protects only the right to address government; the government may refuse to listen or respond).

Likewise, any action or inaction by Defendants Goodson, Shoop, Cheney, Vernocke, and Engstrom did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Furthermore, liability under § 1983 may not be imposed simply because an official denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Moreover, to the extent that Plaintiff seeks to hold Defendants Goodson, Shoop,

14

Cheney, and Vernocke liable due to their respective supervisory positions as sergeants at KCCF, he fails to state such a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege facts suggesting that Defendants Goodson, Shoop, Cheney, and Vernocke encouraged or condoned the conduct of any of the other named Defendants, or authorized, approved, or knowingly acquiesced in that conduct. As set forth *supra*, all of these individuals were involved in responding to Plaintiff's kites

15

and grievance, but that is insufficient to establish liability under § 1983. *See Shehee*, 199 F.3d at 300. Moreover, the fact that Defendant Goodson had not yet acted upon Plaintiff's request for a religious diet as of July 28th is insufficient to establish liability. *See Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888.

Accordingly, for all of the foregoing reasons, Plaintiff has failed to state cognizable claims pursuant to § 1983 against Defendants Goodson, Shoop, Cheney, Vernocke, and Engstrom. The Court, therefore, will dismiss those Defendants for Plaintiff's failure to state a claim upon which relief can be granted against them.

### 2.    Claims Against Defendants Moore and Unknown Parties

Plaintiff asserts First Amendment access to the courts claims, as well as claims related to the handling of his legal mail, against Defendants Moore and Unknown Parties.

### a.    Access to the Courts

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendants' actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Here, Plaintiff suggests that his right to access the courts was impeded because he was "representing [himself] on all cases." (Compl., ECF No. 1, PageID.4.) Plaintiff also references two separate proceedings pending in the court of appeals. (*Id.*, PageID.5.) Public records indicate that Plaintiff currently has two appeals pending before the Michigan Court of Appeals, and that he is representing himself on those

appeals.  Plaintiff has appealed the denial of motions to dismiss and for a bill of particulars in his criminal case.  *See People v. Harmon*, No. 375910 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/375910 (last visited Aug. 11, 2025); *People v. Harmon*, No. 375539 (Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/375539 (last visited Aug. 11, 2025).  Those appeals are still pending before the Michigan Court of Appeals. Even if this Court were to assume that those appeals are the types of cases of action contemplated by *Lewis*, Plaintiff has not set forth any facts alleging any lost remedy that can be attributed to the delays in receiving his mail or the fact that he did not receive physical copies of the mail.  His appeals are still pending before the court of appeals, and he fails to allege any lost remedy in his pending criminal proceedings.  In light of the foregoing, Plaintiff's First Amendment access to the courts claims against Defendants Moore and Unknown Parties will be dismissed.

### b.    Legal Mail Claims

Plaintiff also suggests that Defendants Moore and Unknown Parties' actions violated his constitutional rights with respect to receipt of legal mail.  As set forth above, Plaintiff takes issue with the fact that Defendant Moore did not provide him physical copies of his legal mail, instead telling Plaintiff that his legal mail would be scanned and received on his tablet.  Plaintiff also suggests that Defendants Unknown Parties violated his rights by returning the mail from the court of appeals to the sender and then ultimately scanning that mail as non-legal mail.

In *Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003), the Sixth Circuit considered multiple potential sources of protection for legal mail, including the Sixth Amendment right to counsel, the First Amendment right to petition for redress of grievances, the First Amendment right of access to the courts, and the prisoner's general interest in protecting the attorney-client privilege.  Simply calling a particular correspondence "legal mail," however, does not implicate each and every one of those protections.  For example, the Sixth Amendment right to counsel applies only to criminal prosecutions. *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974) ("As to the Sixth Amendment, its reach is only to protect the attorney-client relations in the criminal setting . . . ."); *see also Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010).  Here, Plaintiff alleges no facts supporting the inference that the legal mail in question was from an attorney representing Plaintiff in a criminal proceeding. Likewise, as discussed *supra*, Plaintiff has not alleged any facts suggesting that the mail in question bore any relationship to a direct appeal of any criminal convictions, a habeas corpus application, or a civil rights claim.

Further, the ability of a prisoner "to receive materials of a legal nature" related to his legal rights and concerns itself implicates a fundamental right. *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996).  Courts have, therefore, extended protections to prisoners' legal mail that do not exist for general mail.  However, not all outgoing and incoming mail constitutes "legal mail," and "the question of what constitutes 'legal mail' is a question of law." *Sallier*, 343 F.3d at 871.  The Michigan Administrative Code defines "legal mail" as correspondence with courts, attorneys, public officials,

the office of the legislative corrections ombudsman, MDOC's central office staff, and staff of the institution in which the prisoner is incarcerated.  *See* Mich. Admin. Code R. 791.6603(7) (Nov. 15, 2008).  Moreover, "the determination of whether mail is considered legal mail depends not only on the nature of the sender, but on the appearance of the mail [as well as] the nature of the contents." *Longmire v. Mich. Dep't of Corr.*, 454 F. Supp. 3d 702, 708 (W.D. Mich. 2020) *aff'd* No. 20-1389, 2021 WL 5352809, at *2 (6th Cir. Jun. 9, 2021) (noting that "the mail must be 'properly and clearly marked as legal materials.'. . . [W]hile the envelope states that it is confidential, it was not, as the district court held, 'clearly marked as legal mail,' nor did it have the Commission's name on it or other salient information, such as 'the name and bar number of a licensed attorney'").

Importantly, the prison official must have some way of knowing that the correspondence in question is a protected communication.  As the Supreme Court has stated:

> We think it entirely appropriate that the State require any such communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment. It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, first identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar.

*Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974); *see also Merriweather v. Zamora*, 569 F.3d 307, 315 (6th Cir. 2009) (commenting on 28 C.F.R. § 540.19(b), which limits special handling by the Federal Bureau of Prisons to mail where "the envelope is marked with the attorney's name and an indication that the person is an attorney," and "the front of the envelope is marked 'Special mail-Open only in the presence of

the inmate' "). Similarly, in *ACLU Fund v. Livingston Cnty.*, 796 F.3d 636 (6th Cir.

2015), the Sixth Circuit determined that the letters at issue were protected in

significant part because of the information on the envelope: "the letters were

addressed to a specific inmate, clearly marked 'legal mail' and included the name and

bar number of a licensed Michigan attorney." *Id.* at 644; *see also Kensu*, 87 F.3d at

174 (defining "'legal mail' to include delivery of legal materials to a prisoner, ***properly***

***and clearly marked as legal materials*** . . ." (emphasis added)).

Here, Plaintiff alleges only that the mail in question was legal mail and that

one piece in particular was from the court of appeals.  However, the question of "what

constitutes 'legal mail' is a question of law." *Sallier*, 343 F.3d at 871.  The Court is

not required to accept as true Plaintiff's characterization of the mail at issue as "legal

mail" because that is a legal conclusion.[3]  Here, Plaintiff has not provided any copies

of the mail in question, nor the envelopes in which that mail was sent.  Although

Plaintiff suggests that the mail was from the court of appeals, anyone could simply

send mail to an incarcerated individual and use a court's address as the return

address.  As set forth *supra*, officials at KCCF returned the mail to the court of

---

[3] When conducting this initial PLRA review, the Court must "accept all well-pleaded allegations in the plaintiff's complaint as true and view facts in the light most favorable to the plaintiff, [but the Court] 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Nugent v. Spectrum Juvenile Justice Servs.*, 72 F.4th 135, 138 (6th Cir. 2023) (quoting *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023)); *see also Iqbal,* 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation").

appeals because the sender could not be confirmed.  To ensure that the mail in question did not contain contraband, it was entirely reasonable for staff at KCCF to send the mail back without opening it because the sender could not be confirmed.

Even if the mail in question would fall within the definition of "legal mail" set forth above, "isolated instances of interference with prisoners' mail" may not rise to the level of a constitutional violation under the First Amendment.  *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519 (6th Cir. Aug. 11, 2000) ("This random and isolated interference with Johnson's mail did not violate his constitutional rights." (citation omitted)); *see also Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation" (citations omitted)); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating that "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife," and concluding that "[s]uch a random and isolated incident is insufficient to establish a constitutional violation" (citation omitted)); *cf. Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated interference" with prisoners' rights may not rise to the level of a First Amendment violation).

The Court recognizes that legal mail is entitled to additional protections, and that it is possible that under some circumstances, even one instance of interference with legal mail could violate an inmate's constitutional rights.  Plaintiff's allegations,

22

however, do not present such a circumstance.  Aside from the June 12th mail that could not be confirmed as coming from the court of appeals, Plaintiff's allegations suggest that he did ultimately receive his other legal mail, whether by physical copy or a scanned version on his tablet. Plaintiff appears to primarily take issue with the fact that KCCF has contracted with Smart Communications so that legal mail is scanned and provided to KCCF inmates electronically via the tablets.  At first, Plaintiff suggests that staff at KCCF could view the mail on his tablet; however, he alleges that he later set up an account for a "separate legal mail app" on the tablet. (Compl., ECF No. 1, PageID.4.)  Plaintiff does not allege any facts that the use of the "legal mail app" permits anyone else to electronically read his legal mail.  Plaintiff's allegations regarding the use of Smart Communications and the electronic provision of legal mail to inmates at KCCF rises to the level of a constitutional violation.

For the foregoing reasons, Plaintiff's claims against Defendants Moore and Unknown Parties regarding the handling of his incoming legal mail will be dismissed.

### 3.    Claims Against Defendant McNeil

Plaintiff raises several claims related to the quality of the food trays and the meals provided against Defendant McNeil.  Although Plaintiff mentions the Eighth Amendment, as set forth above, Plaintiff is a pretrial detainee.  Pretrial detainees "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Thus, the limitations on punishment that appear in the Eighth Amendment do not apply to pretrial detainees. Accordingly, Plaintiff's Eighth Amendment claims will be dismissed.

Pretrial detainees are instead protected under the Due Process Clause of the Fourteenth Amendment.  *See Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018).  All of Plaintiff's Fourteenth Amendment claims concern various conditions of his confinement at the KCCF.  Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'"  *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)).  However, in 2015, the Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment.  *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015).  *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial-detainment contexts."  *Brawner*, 14 F.4th at 592.

Subsequently, in *Brawner*, the Sixth Circuit modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness.  *Id.* at 592, 596.  At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs.  The Sixth Circuit held that to demonstrate deliberate indifference, "[a] pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'"  *Id.* at 596 (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)).  He or she must prove that the defendant acted "deliberately (not accidentally), [and] also

24

recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (citation and quotation marks omitted).

*Brawner*, however, "left the [objective] prong untouched." *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022). Under that prong, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth [or Fourteenth] Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

### c.    Cracked Food Trays

Plaintiff takes issue with the fact that he received several food trays with cracks in them, and suggests that because of the excess water included with the servings of beans, bacteria and mold could grow in the cracks. Plaintiff wrote a grievance about the issue, and Defendant McNeil stated that all cracked trays would be replaced. (Compl,. ECF No.1, PageID.8.) Plaintiff's allegations concerning the food tray, however, fail to rise to the level of a Fourteenth Amendment violation. While Plaintiff speculates that bacteria and mold may be growing in the cracks, he fails to allege any facts suggesting that the food itself has been contaminated. Accordingly, Plaintiff's Fourteenth Amendment claims against Defendant McNeil concerning the cracked food trays will be dismissed. *See Jackson v. Heyns*, No. 1:13-cv-636, 2013 WL 6007503, at *5 (W.D. Mich. Nov. 13, 2013) ("Similarly, Plaintiffs'

allegations that the food trays are cracked does not demonstrate that the food Plaintiffs were provided [was] contaminated.").

### d.    Issues with Bread, Menu, No Fruit

Plaintiff also takes issue with the fact that he received moldy bread on one occasion.  (Compl,. ECF No. 1, PageID.8.)  Plaintiff also alleges that the bread is sometimes floury and underbaked.  (*Id.*, PageID.10.)  Plaintiff suggests that he does not get adequate calories because he chooses not to eat the beans that are placed on the cracked portion of the tray.  (*Id.*, PageID.9.)  Finally, Plaintiff takes issue with not receiving fruit or "nutrients" on the food trays.  (*Id.*)  He states that the kitchen only serves fruit when the kitchen is being inspected or when one of the kitchen machines is not working.  (*Id.*)

With respect to meals, "[c]ourts have consistently found that missing a single meal does not rise to the level of a constitutional violation."  *Marr v. Case*, No. 1:07-cv-823, 2008 WL 191326, at *3 (W.D. Mich. Jan. 18, 2008); *see also Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to an Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health).  If the deprivation of a few meals for a limited period fails to state a constitutional claim, it stands to reason that Plaintiff's

allegations concerning the bread and the fact that he voluntarily does not eat the portions of beans fall far short of the serious deprivations protected by the Eighth and Fourteenth Amendments.  *See Turner v. Gilbertson*, No. 2:17-cv-65, 2017 WL 1457051, at *5 (W.D. Mich. Apr. 25, 2017) (concluding that an inmate failed to state an Eighth Amendment claim when he "missed two packets of crackers—far less than even one meal—and was forced to use a broken spoon to eat the same meal").  Notably, Plaintiff fails to allege any facts suggesting that his health suffered because of the meals and calories provided.  Likewise, Plaintiff fails to allege any facts from which the Court could infer that Plaintiff's health suffered from not being given fruit every day.  Accordingly, Plaintiff's Fourteenth Amendment claims concerning the bread, lack of fruit, and menus at KCCF will also be dismissed.

### 4.    Claims Against Defendant Fuller

Based upon Plaintiff's allegations against Defendant Fuller, the Court has construed Plaintiff's complaint to assert a First Amendment free exercise claim against Defendant Fuller.

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. Const. amend I.  The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment.  *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).  Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right.  *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First

Amendment protection to freely exercise their religion.  *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).   To establish that this right has been violated, Plaintiff must establish (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Here, Plaintiff fails to set forth a plausible First Amendment free exercise claim against Defendant Fuller.  Although Plaintiff mentions that he is Muslim, he fails to allege any fact suggesting that his beliefs are "sincerely held." Plaintiff also does not allege any facts suggesting that the religious diet he requested is a religious belief within Plaintiff's own "scheme of things."  *See Kent*, 821 F.2d at 1224–25. Notably, Plaintiff does not allege any facts suggesting that Defendant Fuller denied Plaintiff's request for a religious diet and, therefore, violated Plaintiff's First Amendment rights.   Instead, Plaintiff explicitly notes that Defendant Fuller approved Plaintiff's request for a religious diet, but told Plaintiff that the request had to ultimately be approved by Defendant Goodson "before it goes to the kitchens [and he] may not have done it yet." (Compl., ECF No. 1, PageID.11.)  Based upon that fact, Plaintiff cannot maintain a First Amendment free exercise claim against Defendant

Fuller.  Accordingly, Plaintiff's claims against Defendant Fuller will be dismissed for failure to state a claim upon which relief may be granted.

### 5.    Claims Against Defendant Kaylynn

Plaintiff faults Defendant Kaylynn for harassing him every two weeks at 8:00 a.m. by banging on Plaintiff's cell door, asking if Plaintiff has any mental health issues, and asking if Plaintiff knows how to reach out if he needs to.  (Compl., ECF No. 1, PageID.12.)  Plaintiff avers that because of Defendant Kaylynn's actions, his sleep schedule is "unreasonably being altered."  (*Id.*)

Plaintiff's allegations against Defendant Kaylynn simply fail to rise to the level of unconstitutional conduct.  Even if Defendant Kaylynn's actions could be classified as harassment (and the Court concludes they could not), verbal harassment simply does not rise to the level of a constitutional violation under either the Eighth Amendment or the Fourteenth Amendment.  *See Ivey*, 832 F.2d at 955; *see also Jones v. Porter,* No. 99–1326, 2000 WL 572059, at *2 (6th Cir. May 1, 2000) (concluding that "Jones's Fourteenth Amendment equal protection claim is without merit, as a prison official's verbal harassment or idle threats do not rise to a constitutional level"); *Clark v. Turner,* No. 96–3265, 1996 WL 721798, at *2 (6th Cir. Dec.13, 1996) (stating that "[v]erbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights").

Here, Plaintiff appears to be complaining based upon the fact that Defendant Kaylynn was simply doing her job as a mental health professional employed by the KCCF.  Accordingly, Plaintiff's claims against Defendant Kaylynn will be dismissed.

**Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1). *See McGore*, 114 F.3d at 610–11.

A judgment consistent with this opinion will be entered.


Dated:  August 19, 2025                    /s/ Phillip J. Green
                                           PHILLIP J. GREEN
                                           United States Magistrate Judge